IN THE UNITED STATES OF DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CANOPIUS US INSURANCE, INC., | : | Civil Action No.: |
| | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| JAMES HOME REPAIR, PRIME PROPERTY | : | |
| MANAGEMENT, INC., NEIGHBORHOOD | : | |
| RESTORATION, LP XII, and WALTER OLIVER | : | |
| | : | |
| Defendants | : | |
| | : | |

## COMPLAINT – CIVIL ACTION
### [DECLARATORY JUDGMENT]

Plaintiff, Canopius US Insurance, Inc., by its attorneys, The Chartwell Law Offices, LLC

as for a Complaint against Defendants James Home Repair, Prime Property Management, Inc.,

Neighborhood Restoration, LP XII and Walter Oliver, respectfully alleges, upon information and

belief, as follows:

### THE PARTIES

1.     Plaintiff, Canopius US Insurance, Inc. (formerly known as Omega US Insurance

Inc. and hereinafter referred to as "Canopius US"), is an insurance company with its principal

place of business in the state of Illinois.

2.     Defendant, James Home Repair, is a Partnership organized and existing under the

laws of the Commonwealth of Pennsylvania with an address of 6104 Media Street, Philadelphia,

Pennsylvania, 19151.

3.     Defendant, Prime Property Management, Inc. (hereinafter referred to as "Prime

Property Management"), is a corporation organized and existing under the laws of the

Commonwealth of Pennsylvania, with a place of business located at 8300 West Chester Pike, Upper Darby, Pennsylvania.

4.     Defendant, Neighborhood Restoration, LP XII (hereinafter referred to as "Neighborhood Restoration"), is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania with a place of business located at 8300 West Chester Pike, Upper Darby, Pennsylvania.

5.     Nominal Defendant, Walter Oliver ("Oliver"), is an individual residing at 121 N. Robinson Street, Philadelphia, Pennsylvania.

6.     The loss and claims at issue in this case arise out of an incident that occurred in Pennsylvania.   This case involves the interpretation of the insurance policy entered into in Pennsylvania.

## VENUE AND JURISDICTION

7.     This action is brought under Section 1332 of Title 28, United States Code.

8.     The amount in controversy exceeds the sum or value of Seventy Five Thousand ($75,000) Dollars exclusive of interest and costs.

9.     This is an action between citizens of different states and diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332.

10.     Venue is proper under 28 U.S.C. § 1391 as one or more defendants reside in this judicial district or a substantial part of the events of omissions giving rise to the claim occurred in this judicial district.

11.     This is a case or controversy involving an insurance policy issued in this judicial district sufficient to permit a declaratory judgment under 28 U.S.C. § 2201.

## ISSUES FOR DETERMINATION

12.     Canopius US seeks the Court's determination that it has no obligation to provide coverage or defense to James Home Repair for the Underlying Oliver Lawsuit because:

        a.)     the work on the steps that led to Oliver's injuries was performed on or about July 21, 2011, prior to a gap in coverage wherein James Home Repair did not have continuous coverage with Canopius US; and

        b.)     that coverage for James Home Repair is excluded under Form OUS108 - Prior Work Exclusion under Policy No. ACE-004948-2.

13.     Canopius US seeks the Court's determination that it has no obligation to provide coverage or defense to Prime Property Management for the Underlying Oliver Lawsuit because:

        a.)     Prime Property Management is not a Named or Additional Insured under the Canopius US Policy;

        b.)     the work on the steps that led to Oliver's injuries was performed on or about July 21, 2011, prior to a gap in coverage wherein James Home Repair did not have continuous coverage with Canopius US; and

        c.)     that coverage for Prime Property Management is excluded under Form OUS108 - Prior Work Exclusion under Policy No. ACE-004948-2.

14.     Canopius US seeks the Court's determination that it has no obligation to provide coverage or defense to Neighborhood Restoration for the Underlying Oliver Lawsuit because:

        a.)     Neighborhood Restoration is not a Named or Additional Insured under the Canopius US Policy;

b.) the work on the steps that led to Oliver's injuries was performed on or about July 21, 2011, prior to a gap in coverage wherein James Home Repair did not have continuous coverage with Canopius US; and

c.) that coverage for James Home Repair is excluded under Form OUS108 - Prior Work Exclusion under Policy No. ACE-004948-2.

<u>**UNDERLYING OLIVER LAWSUIT**</u>

**ORIGINAL COMPLAINT**

15. On or about November 24, 2014, Oliver filed a Complaint (the "Original Complaint") in the Pennsylvania Court of Common Pleas, Philadelphia County, as of the November Term, 2014, No. 02608, Case ID No. 141102608, against Anderson James d/b/a A. James Home Repair, Prime Property Management, Inc. and Neighborhood Restoration, LP XII seeking recovery for injuries allegedly sustained on February 19, 2014 as a result of a fall down incident (the "incident") at the residence located at 121 N. Robinson Street, Philadelphia, Pennsylvania ("premises"). Attached as Exhibit "1" and incorporated by reference, without admission to any of its allegations, is a copy of the Original Complaint.

16. Upon information and belief, at all times material hereto, James Home Repair as named in the Original Complaint, is and was Defendant, James Home Repair, as named in this action. As such, hereinafter "James Home Repair" shall also refer to Anderson James d/b/a A. James Home Repair as named in the Underlying Action.

17. The Original Complaint alleged, *inter alia*, that Prime Property Management and Neighborhood Restoration owned, controlled, possessed, managed, leased, and/or was otherwise responsible for the maintenance of the premises, including the cement steps where the incident is alleged to have occurred. Exhibit "1" at ¶¶5-6.

18.     The Original Complaint also alleged, *inter alia*, that Prime Property Management and/or Neighborhood Restoration had an agreement with James Home Repair to provide concrete repair and maintenance services for the cement steps in the area where the incident is alleged to have occurred.  Exhibit "1" at ¶7.

19.     The Original Complaint also alleged, inter alia, that James Home Repair was acting as an agent of Prime Property Management and/or Neighborhood Restoration.  Exhibit "1" at ¶9.

20.     The Original Complaint further alleged, *inter alia*, that on or about July 21, 2011, James Home Repair performed repair work on the cement steps and installed a patch in the area where the incident is alleged to have occurred. Exhibit "1" at ¶8.

21.     The Original Complaint alleged, *inter alia*, that on or about February 19, 2014, Oliver was walking down the steps in front of the premises when the "cement step broke apart, causing Plaintiff to fall to the ground."  Exhibit "1" at ¶¶11-12.   Plaintiff alleged that he sustained severe and permanent injuries as a result of the incident.  Exhibit "1" at ¶¶29-34.

## CANOPIUS US' POLICIES

22.     Omega US Insurance (now Canopius US) issued Commercial General Liability Policy Number 5647X/ARL001 to James Home Repair as the Named Insured effective from August 9, 2010 to August 9, 2011 (the "2010 Policy").

23.     Omega US Insurance (now Canopius US) issued Commercial General Liability Policy Number ACE-004948 to James Home Repair as the Named Insured effective from November 5, 2011 to November 12, 2012 (the "2011 Policy").

24.     Omega US Insurance (now Canopius US) issued Commercial General Liability Policy Number ACE-004948-1 to James Home Repair as the Named Insured effective from November 5, 2012 to November 12, 2013 (the "2012 Policy").

25.     Canopius US issued Commercial General Liability Policy Number ACE-004948-2 to James Home Repair as the Named Insured effective from November 5, 2013 to November 12, 2014 (the "2013 Policy"). A copy of the 2013 Policy (redacted for trade secret premium information) is attached as Exhibit "2" and incorporated by reference.

26.     The Policies do not identify Prime Property Management as a Named Insured or an Additional Insured on or about the date of the alleged incident described in the complaint.

27.     The Policies do not identify Neighborhood Restoration as a Named Insured or an Additional Insured on or about the date of the alleged incident described in the complaint.

**THE PROVISIONS**

28.     The 2013 Policy contained the following provision:

**SECTION I – COVERAGES**

**COVERAGE   A   BODILY   INJURY   AND   PROPERTY   DAMAGE LIABILITY**

**1. Insuring Agreement**

  a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
  ...
  b.  This insurance applies to "bodily injury" and "property damage" only if:
  ...

> (2) The "bodily injury" or "property damage" occurs during the policy
> period.

*See* Exhibit "2."

29.    The 2010 Policy, 2011 Policy and 2012 contained the same or similar provision.

30.    The 2013 Policy also contained Form OUS108 (10/07) Prior Work

Exclusion endorsement, which provides:

> This endorsement modified insurance provided under the **POLICY.**
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
>
> The following is added to **Section-1 COVERAGES, COVERAGE A
> BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2.
> Exclusions**:
>
> **Prior Work**
>
> This insurance does not apply to "bodily injury" or "property damage" that
> arises out of "your work", that was completed prior to:
>
> 1.  The inception date of the first policy in a series of uninterrupted
>     renewal policies issued by us; or
>
> 2.  The inception date of this policy.

*See* Exhibit "2," Form OUS108.

31.    The 2013 Policy contained the following Exclusion:

> **SECTION I – COVERAGES**
> …
> **2. Exclusions**
>
> This insurance does not apply to:
> …
> **l. Damage to Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it
> and included in the "products-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out
> of which the damage arises was performed on your behalf by a
> subcontractor.

7

*See* Exhibit "2."

32.   The 2013 Policy contained the following definition:

**SECTION V - DEFINITIONS**

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

*See* Exhibit "2."

33.   The 2013 Policy also contained the following provision:

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)     Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I Coverage A Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a.   We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.   The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

*See* Exhibit "2."

## DENIAL OF DEFENSE AND INDEMNIFICATION

34.     On or about January 9, 2015, Canopius US, by and through its Third Party Claims Administrator Johns Eastern Company, advised James Home Repair that it was denying defense and indemnification to James Homes Repair for the Underlying Oliver Lawsuit.

35.     Specifically, the denial was based on Form OUS108 – Prior Work Exclusion in the 2013 Policy and Plaintiff's allegation in the Original Complaint that the repairs to the steps were made on July 21, 2011.

36.     Specifically, James Home Repair maintained insurance with Canopius US from August 9, 2010 to August 9, 2011 under the 2010 Policy.

37.     From August 9, 2011 to November 5, 2011, James Home Repair did not maintain insurance with Canopius US (hereinafter, the "Gap in Insurance").

38.     On November 5, 2011, James Home Repair obtained a new policy of insurance with Canopius US, which was the 2011 Policy.

39.     Form OUS108 – Prior Work Exclusion specifically excludes coverage for "bodily injury" that arises out of James Home Repair's work that was completed prior to either the inception date of the first policy in a series of uninterrupted renewal policies issued by Canopius US or the inception date of the 2013 Policy.

40.     Plaintiff's allegation was that the work to the steps was performed on or about July 21, 2011, before the Gap in Insurance.

41.     For OUS108 – Prior Work Exclusion, specifically excluded coverage for bodily injury that arose out of the July 21, 2011 work performed by James Home Repair.

## THE CONTRACT FOR REPAIR OF THE STEPS AND PAYMENT

42.     On or about July 21, 2011, James Home Repair submitted a written Contract for repair (the "Contract") to Neighborhood Restoration to complete work at the Premises located at 121 Robinson Street, Philadelphia, Pennsylvania.  A copy of the Contract is attached as Exhibit "3" and incorporated by reference.

43.     The Contract called for James Home Repair to "Remove 2 steps and replace 2 steps" and stucco wall where needed at the Premises in consideration for $550.00.  Exhibit "3."

44.     On or about July 27, 2011, Neighborhood Restoration issued check No. 3039 in the amount of $550.00 (the "Check") to James Home Repair for payment of repair work at the

Premises as defined by the Contract. A copy of the July 27, 2011 Check stub is attached as Exhibit "4" and incorporated by reference.

## THE AMENDED COMPLAINTS

### First Amended Complaint

45.    On or about March 20, 2015, Oliver filed an Amended Complaint (the "First Amended Complaint"). Attached as Exhibit "5" and incorporated by reference, without admission to any of its allegations, is a copy of the First Amended Complaint.

46.    The First Amended Complaint still alleged, *inter alia*, that on or about July 21, 2011, James Home Repair performed repair work on the steps and installed a patch in the area where the incident is alleged to have occurred. Exhibit "5" at ¶10.

47.    The First Amended Complaint also still alleged, *inter alia*, that on or about February 19, 2014, "the patched portion of one of the steps broke apart, causing [Oliver] to fall to the ground." Exhibit "5" at ¶11-12.

### Change of Counsel and the Stipulation

48.    On or about August 10, 2015, in the Underlying Oliver Lawsuit, counsel for the Plaintiff, Walter Oliver, withdrew his appearance and James C. Haggerty, Esquire, entered his appearance on behalf of Oliver. Attached as Exhibit "6" is a copy of the Docket in the Underlying Action reflecting the change of counsel.

49.    On or after August 10, 2015, Oliver circulated a Stipulation (the "Stipulation") to the Defendants in the Underlying Lawsuit. Attached as Exhibit "7" and incorporated by reference, without admission to any of its allegations, is a copy of the Stipulation.

50.     The Stipulation permitted Oliver to file a Second Amended Complaint amending several paragraphs, including the date the alleged repairs were made to the steps and allegations as to how the incident purportedly occurred. Exhibit "7."

51.     The Stipulation permitted Oliver to change the date the repairs were made from July 21, 2011 to the "summer of 2013." Exhibit "5" at ¶10; Exhibit "7."

52.     The Stipulation also permitted Oliver to change how the accident occurred from "the patched portion of one of the steps broke apart, causing [Oliver] to fall to the ground" to "the repaired portion of one of the steps broke apart causing [Oliver] to fall to the ground." Exhibit "5" at ¶11-12; Exhibit "7."

53.     No justification or explanation was contained within the Stipulation as to why Plaintiff needed to change the allegations regarding the date the repairs were allegedly made and how the accident occurred.  Exhibit "7."

54.     The Stipulation was signed by counsel for Walter Oliver, James Haggerty, Esquire, personal counsel for James Home Repair, Geoffrey B. Gompers, Esquire, and counsel for Prime Property Management and Neighborhood Restoration, Eric J. Applebaum, Esquire. Exhibit "7."

55.     On or about August 24, 2015, Oliver filed the Stipulation to Amend the First Amended Complaint. *See* Exhibit "6."

56.     On or about August 25, 2015, Oliver filed the Second Amended Complaint with the change of repair date and how the accident occurred.  Exhibit "6."

57.     On or about August 26, 2015, counsel for James Home Repair in the Underlying Oliver Lawsuit, Geoffrey B. Gompers, Esquire, sent a tender of defense to Canopius US, by and through its Third Party Claims Administrator Johns Eastern Company, based on the fact that the

Second Amended Complaint "now asserts a valid covered claim during the time period in which [James Home Repair's] policy was in effect." Attached as Exhibit "8" and incorporated by reference, without admission to any of its allegations, is a copy of the August 26, 2015 correspondence from Geoffrey B. Gompers, Esquire.

## Second Amended Complaint

58.     On or about August 25, 2015, Oliver filed a Second Amended Complaint (the "Second Amended Complaint"). Attached as Exhibit "9" and incorporated by reference, without admission to any of its allegations, is a copy of the Second Amended Complaint.

59.     The Second Amended Complaint now alleged, *inter alia*, that "in or about the summer of 2013, while [Oliver] was residing at the property, [James Home Repair] performed work to replace the steps of the property." Exhibit "9" at ¶10.

60.     The Second Amended Complaint also now alleged, *inter alia*, that on or about February 19, 2014, Oliver was caused to be injured as he was exiting the residence when "the repaired portion of one of the steps broke apart causing [Oliver] to fall to the ground." Exhibit "9" at ¶11-12.

61.     As a result of the new allegations regarding the alleged date the repairs were made that were inserted into the Second Amended Complaint, on or about August 26, 2015, James Home Repair tendered its defense to Canopius US, which accepted same under a reservation of rights as Pennsylvania law compelled Canopius US to do so.

## FIRST CAUSE OF ACTION - DECLARATION BY THE COURT THAT THE ONLY POTENTIALLY APPLICABLE POLICY IS THE 2013 POLICY

62.     Canopius US repeats, re-alleges and restates each and every allegation contained in paragraphs "1" through "61" inclusive, with the same force and effect as if fully set forth herein.

63.     In the Underlying Complaints, Oliver alleges that on or about February 19, 2014, he was caused to be injured when "the repaired portion of one of the steps broke apart causing [Oliver] to fall to the ground."

64.     The 2013 Policy provides that it potentially provides coverage for Oliver's alleged "bodily injury" as it occurred during the policy period.  Specifically, the 2013 Policy provides:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

...

b.  This insurance applies to "bodily injury" and "property damage" only if:

...

(2) The "bodily injury" or "property damage" occurs during the policy period.

*See* Exhibit "2."

65.    The 2010 Policy, 2011 Policy and 2012 Policy do not potentially provide coverage for Oliver's claimed injuries as they contain the same or similar language as the 2013 Policy as set forth above.

66.    Oliver's injuries are alleged to have occurred on or about February 19, 2014 and, therefore, the injuries not occur during the 2010, 2011 and 2012 policy periods and said Policies only potentially provide coverage for bodily injury that occurs during the applicable policy period.

67.    Canopius US, therefore, alleges that only applicable policy is the 2013 Policy as the "bodily injury" to Oliver is alleged to have occurred during the 2013 Policy period.

**SECOND CAUSE OF ACTION -**
**DECLARATION BY THE COURT THAT CANOPIUS US HAS NO**
**OBLIGATION TO PROVIDE COVERAGE OR A DEFENSE TO**
**DEFENDANT, JAMES HOME REPAIR, PURSUANT TO FORM OUS108**
**– PRIOR WORK EXCLUSION**

68.    Canopius US repeats, re-alleges and restates each and every allegation contained in paragraphs "1" through "67" inclusive, with the same force and effect as if fully set forth herein.

69.    As previously alleged, the only applicable policy is the 2013 Policy as the "bodily injury" to Oliver is alleged to have occurred during the 2013 Policy period.

70.    2013 Policy's Form OUS108 - Prior Work Exclusion states that the insurance does not apply to "bodily injury" that arises out of James Home Repair's work that was completed prior to either the inception date of the first policy in a series of uninterrupted renewal policies issued by Canopius US or the inception date of the 2013 Policy.  Exhibit "2," Form OUS108.

71.     The allegations of the Original Complaint and the First Amended Complaint state that the work to repair and/or replace two steps at the Premises located at 121 Robinson Street, Philadelphia, Pennsylvania occurred on or before July 21, 2011.

72.     The Contract for the work and the Check in payment for the work also indicate that the work to repair and/or replace two steps at the Premises located at 121 Robinson Street, Philadelphia, Pennsylvania occurred on or before July 21, 2011.

73.     After July 21, 2011, James Home Repair had a Gap in Insurance with Canopius US from August 9, 2011 to November 5, 2011 wherein James Home Repair did not have coverage under any Canopius US policy.

74.     The Gap in Insurance triggered 2013 Policy's Form OUS108 - Prior Work Exclusion, and precludes coverage for Oliver's injuries as they resulted from James Home Repair's work performed on or before July 21, 2011, prior to the Gap in Insurance.

75.     As a result, Canopius US owed no duty to defend James Home Repair as the allegations contained in the Original Complaint and Second Amended Complaint alleged that the work was performed prior to the Gap in Insurance.

76.     It was not until Oliver's specious filing of the Second Amended Complaint with the new allegations that changed the date the repair work was allegedly performed that Canopius US's duty to defend James Home Repair was triggered.

77.     Canopius US respectfully requests the Court to look beyond the new language inserted into the Second Amended Complaint, seemingly drafted to trigger a duty to defend on the part of Canopius US and to attempt to bring Oliver's claims within coverage of the 2013 Policy, and declare that Canopius US has no duty to defend or indemnify Defendants as the work

was performed on or before July 21, 2011 as indicated by the Original Complaint, the First Amended Complaint, the Contract and the Check.

78.     Canopius US, therefore, alleges that it is entitled to a judicial declaration that the Policy provides no coverage or indemnification for the claims asserted by Defendants, Walter Oliver, Neighborhood Restorations, and Prime Property Management against James Home Repair, and any claim or cross-claim which any party has or will be asserted against James Home Repair in the Underlying Action, as 2013 Policy's Form OUS108 - Prior Work Exclusion specifically excludes such coverage and indemnification.

79.     Canopius US also alleges that it is entitled to a judicial declaration that it has no duty to defend James Home Repair for the claims asserted by Defendants, Walter Oliver, Neighborhood Restorations, and Prime Property Management against James Home Repair, and any claim or cross-claim which any party has or will be asserted against James Home Repair in the Underlying Action, as the 2013 Policy's Form OUS108 - Prior Work Exclusion specifically excludes such duty to defend.

### THIRD CAUSE OF ACTION -
### DECLARATION BY THE COURT THAT CANOPIUS US HAS NO
### OBLIGATION TO PROVIDE COVERAGE OR INDEMNIFICATION TO
### DEFENDANTS, NEIGHBORHOOD RESTORATIONS AND PRIME
### PROPERTY MANAGEMENT

80.     Canopius US repeats, re-alleges and restates each and every allegation contained in paragraphs "1" through "79" inclusive, with the same force and effect as if fully set forth herein.

81.     Canopius US alleges that it is entitled to a judicial declaration that the Policy provides no coverage or indemnification for the claims asserted by Defendant, Walter Oliver against Neighborhood Restorations and Prime Property Management, and any claim or cross-

claim which any party has or will be asserted against them in the Underlying Action, as Neighborhood Restorations and Prime Property Management are not Named Insureds or Additional Insureds under the 2013 Policy and/or the 2013 Policy's Form OUS108 - Prior Work Exclusion specifically excludes such coverage and indemnification.

**FOURTH CAUSE OF ACTION -**
**DECLARATION BY THE COURT THAT CANOPIUS US HAS NO DUTY**
**TO DEFEND DEFENDANTS, NEIGHBORHOOD RESTORATIONS AND**
**PRIME PROPERTY MANAGEMENT**

82.    Canopius US repeats, re-alleges and restates each and every allegation contained in paragraphs "1" through "81" inclusive, with the same force and effect as if fully set forth herein.

83.    Canopius US alleges that it is entitled to a judicial declaration that it has no duty to defend Neighborhood Restorations and Prime Property Management for the claims asserted by Defendant, Walter Oliver, and any claim or cross-claim which any party has or will be asserted against them in the Underlying Action, as Neighborhood Restorations and Prime Property Management are not Named Insureds or Additional Insureds under the 2013 Policy and/or the 2013 Policy's Form OUS108 - Prior Work Exclusion specifically excludes such duty to defend.

WHEREFORE, a justiciable controversy exists between the parties to this action arising out of these claims. Canopius US therefore asks this Court to construe and determine the rights of the parties and to declare that:

a.    The only applicable policy that could potentially provide coverage for Oliver's "bodily injury" is the 2013 Policy.

b.    The 2013 Policy issued by Canopius US to James Home Repair provides no coverage for the claims asserted or which could be asserted by Defendants,

Walter Oliver, Prime Property Management, Inc. and Neighborhood Restoration LP XII;

c.  Canopius US has no duty to defend or indemnify James Home Repair from the claims asserted or which could be asserted by Defendants, Walter Oliver, Prime Property Management, Inc. and Neighborhood Restoration LP XII;

d.  The 2013 Policy issued by Canopius US to James Home Repair provides no coverage for James Home Repair for any and all claims asserted or which could be asserted by Defendants, Walter Oliver, Prime Property Management, Inc. and Neighborhood Restoration LP XII;

e.  Canopius US has no duty to defend or indemnify Prime Property Management, Inc. from the claims asserted by Defendant Walter Oliver;

f.  Canopius US has no duty to defend or indemnify Neighborhood Restoration LP XII from the claims asserted by Defendant Walter Oliver; and

g.  For any such other and further relief as this Court shall deem just and proper.

THE CHARTWELL LAW OFFICES, LLP

Dated: 1/12/16

By: _____

Michael J. Diamond (ID#69420)
Attorneys for Plaintiff,
Canopius US Insurance, Inc.
**The Chartwell Law Offices, LLP**
One Logan Square
130 N. 18th Street, 26th Floor
Philadelphia, PA 19103
(p) 215-972-7006
(f) 215-972-7008